**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON OLIVER<br>501 Horizon Way<br>Branchburg, NJ 08853<br><br>   Plaintiff,<br><br>   v.<br><br>ANYWHERE REAL ESTATE, INC.<br>175 Park Avenue<br>Madison, NJ 07940<br>   and<br>REALOGY HOLDING CORP.<br>175 Park Avenue<br>Madison, NJ 07940<br>   and<br>REALOGY OPERATIONS, LLC<br>175 Park Avenue<br>Madison, NJ 07940<br><br>   Defendants. | CIVIL ACTION<br><br>No.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Shannon Oliver (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Anywhere Real Estate, Inc., Realogy Holding Corp., and Realogy Operations, LLC (*hereinafter* collectively referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 200(d) *et seq*.), the Pregnancy Discrimination Act ("PDA"), and the New Jersey Law Against Discrimination ("NJLAD" - N.J.S.A. §§ 10:5-1 *et seq.*). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

1

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact as her federal claims.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(2), venue is properly laid in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5. Plaintiff is proceeding herein after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Anywhere Real Estate, Inc. (*hereinafter* "Defendant Anywhere") is a parent corporation to various real estate brokerages providing franchising, relocation services, and

title and settlement services in different locations, including New Jersey. Defendant Anywhere has headquarters located at the above-captioned address.

9. Defendant Realogy Holding Corp. ("Defendant Realogy") is a holding company for its consolidated subsidiaries providing franchising, relocation services, and title and settlement services in different locations, including New Jersey. Defendant Realogy has offices located at the above-captioned address.

10. Defendant Realogy Operations, LLC ("Defendant LLC") is a wholly owned subsidiary of Defendant Realogy providing franchising, relocation services, and title and settlement services in different locations, including New Jersey. Defendant LLC has headquarters located at the above-captioned address.

11. Because of their interrelation of operations, common ownership of management, centralized control of labor relations, human resources and training, common ownership/governance or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer.

12. At all times relevant herein, Defendants acted through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. On or about March 24, 2022, Defendants hired Plaintiff (female) as a Product Marketing Account Manager (*hereinafter* "PMAM").

15. Plaintiff physically began working for Defendants on or about April 18, 2022.

16. At the time of her termination (discussed *infra*), Plaintiff was directly supervised by Direct of Product Marketing, Sara Bentson (*hereinafter* "Bentson"), and indirectly supervised by Senior Director of Product Marketing, Gina Uriarte (*hereinafter* "Uriarte").

17. During her tenure with Defendants, Plaintiff was a dedicated and hardworking employee who performed her job well. By way of example, Defendants did not subject Plaintiff to any progressive discipline during her tenure and, in fact, praised her performance.

18. Upon Plaintiff's hire, she was the sole individual hired to work on a project roll out (called Moxiworks).

19. Shortly following Plaintiff's hire, in or about April of 2022, Defendants hired Collin Roberts (*hereinafter* "Roberts") as a PMAM.

20. After working for Defendants for several months, in or about summer of 2022, Defendants hired two (2) more individuals, Amy Leister (*hereinafter* "Leister") and Julian Montoya (*hereinafter* "Montoya") into the PMAM role.

21. When Leister and Montoya were hired, Defendants tasked Plaintiff and Roberts with training Leister and Montoya for their PMAM positions.

22. In addition to Plaintiff's aforesaid training responsibilities, Plaintiff had more responsibilities and a larger workload than both Leister and Montoya.

23. While training Leister and Montoya, in or about June 2022, Plaintiff learned that she was pregnant.

24. In or about November of 2022, Plaintiff informed Defendants' management, including Bentson, that she was pregnant and intended to take a maternity leave starting in or about February of 2023.

25. Specifically, Plaintiff had planned for February 10, 2023 to be her last physical day of work before starting maternity leave.

26. After disclosing her pregnancy to Defendants' management, discussed *supra*, Plaintiff notified Defendants' Human Resources/Leave of Absence Benefits team by way of email of her intent to commence maternity leave in or about February of 2023.

27. In said email (discussed in ¶ 26), Plaintiff inquired as to what paperwork she needed to complete in order to apply for a maternity leave of absence.

28. On or about December 1, 2022, after sending the aforesaid email (discussed *supra*), Plaintiff attended a meeting with Senior Benefit Analyst, Lisa Iannacone (*hereinafter* "Iannacone") and reiterated her intent to take a maternity leave of absence.

29. In response thereto, Iannacone indicated that she would provide Plaintiff with the requisite paperwork to complete so that Iannacone could submit Plaintiff's request for a leave of absence related to the birth of her child.

30. However, as of January 6, 2023, Defendants failed to provide Plaintiff with any leave of absence paperwork despite Iannacone's assurance that she would.

31. Accordingly, on or about January 6, 2023, Plaintiff emailed Innacone and stated as follows:

> Good morning Lisa
>
> I am following up on our maternity review meeting from last month. I haven't received any information so just wanted to check since I plan to have Feb 10 as my last working day, pending any unforeseen circumstances. Please let me know if there is any paperwork I can fill out now or emails I should keep an eye out for.

32. On the same date (January 6, 2023), Iannacone responded by sending Plaintiff the requisite paperwork for her future maternity leave. Curiously, Iannacone instructed Plaintiff ***not***

5

to complete such paperwork until thirty (30) days prior to the date she planned to commence her maternity leave (which would have been January 12, 2023, as she planned to start her leave on February 11, 2023).

33. On or about January 8, 2023, at 10:50 p.m., just two (2) days after her aforesaid email correspondence with Iannacone, Uriate abruptly sent Plaintiff a meeting invitation for January 9, 2023.

34. The next day, on or about January 9, 2023 (three days before Plaintiff was required and had intended to submit her maternity leave request paperwork to Iannacone), Plaintiff attended such meeting (discussed *supra*) with Uriate and Human Resources Representative, Amy Williamson (*hereinafter* "Williamson").

35. During said January 9, 2023 meeting, Uriate and Williamson informed Plaintiff that her position was eliminated, effective January 20, 2023.

36. Defendants' reason for Plaintiff's termination is completely pretextual because: (1) upon information and belief, Leister and Montoya (the individuals trained by Plaintiff and Collins), were retained in the PMAM position; (2) upon further information and belief, the former Brand Partner, Cassandra D'Aiello Barrett (*hereinafter* "Barrett"), was promoted to a PMAM shortly following Plaintiff's termination (according to her LinkedIn profile), thus evidencing that Plaintiff's role was not eliminated; (3) Defendants' Human Resources seemingly delayed Plaintiff's application for a maternity leave; (4) Defendants' failed to inform Plaintiff as to why she was selected for the alleged job elimination; (5) Defendants' offered Plaintiff an unsolicited severance agreement – offering Plaintiff just one (1) week of severance in exchange for a full release of any and all claims that Plaintiff has against Defendants (which she rejected); and (6)

6

Defendants terminated Plaintiff just one (1) business day following her last request for a leave of absence for the birth of her child.

37. Plaintiff believes and therefore avers that Defendants terminated her employment in violation of Title VII, the PDA, and the NJLAD.

## COUNT I
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act ("PDA")
([1] Sex/Gender/Pregnancy Discrimination; and [2] Retaliation)
-Against All Defendants-

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff informed Defendants' management and Human Resources/Leave of Absence Benefits team that she was pregnant in or about November of 2022, and made several requests for a leave of absence following the birth of her child.

40. After informing Defendants she was pregnant and planned to take leave following the birth of her child, Defendants abruptly terminated her employment, claiming job elimination, which was completely pretextual.

41. Plaintiff believes and therefore avers that her pregnancy was a motiving and/or determinative factor in Defendants' decision to terminate her employment.

42. These actions as aforesaid constitute violations of Title VII/the PDA.

## COUNT II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Gender/Sex/Pregnancy Discrimination; and [2] Retaliation)
-Against All Defendants-

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7

44. Plaintiff informed Defendants' management and Human Resources/Leave of Absence Benefits team that she was pregnant in or about November of 2022, and made several requests for a leave of absence following and related to the birth of her child.

45. After informing Defendants she was pregnant and requesting the ability to take a medical leave of absence related to the birth of her child, Defendants abruptly terminated her employment – claiming job elimination, which was completely pretextual.

46. Plaintiff believes and therefore avers that her pregnancy was a motivating and/or determinative factor in Defendants' decision to terminate her employment.

47. Plaintiff also believes and therefore avers that she was terminated in retaliation for her requests/need for a reasonable accommodation related to her pregnancy (i.e., medical leave following the birth of her child)

48. These actions as aforesaid constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: September 1, 2023